**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:22-cr-121 (TNM)** |
| **v.** | : | |
| | : | |
| **ERIC ANDREW CANTRELL,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Eric Cantrell to 30 days' home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution.

### I.     Introduction

Defendant Eric Cantrell, 52, an engineer at a Fortune 500 company, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.[1]

Defendant Eric Cantrell is expected to plead guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence of 30 days' home detention is appropriate in this

---

[1] Although the Statement of Offense in this matter reflects a sum of more than $1.4 million dollars for repairs, as of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

case because Eric Cantrell (1) reached the Capitol building after walking through torn scaffolding and past broken barriers; (2) spent 19 minutes on the Upper West Terrace watching the chaos unfold; and (3) entered the Capitol building through an emergency exit door despite an alarm blaring.

The Court must also consider that Eric Cantrell's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts of and circumstances of Eric Cantrell's crime support a sentence of 30 days' home detention in this case.

## II.    Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* Statement of Offense at 1–3.

### Defendant Eric Cantrell's Role in the January 6, 2021 Attack on the Capitol

Jared Cantrell, Quentin Cantrell, and Eric Cantrell (all cousins, collectively "the Cantrells")[2] attended the Stop the Steal rally and then marched down Constitution Avenue toward the West Lawn. The Cantrells reached the Lower West Terrace of the Capitol grounds and ascended to the Upper West Terrace through the Northwest scaffolding.  In several of the photos included in this memorandum, Eric Cantrell is circled in green, Quentin Cantrell is circled in yellow, and Jared Cantrell is circled in red.

---

[2] The government charged all three Cantrells together in this case, 22-CR-121 (TNM).  Jared Cantrell and Quentin Cantrell are awaiting trial, currently scheduled to begin on April 3, 2023.



*Image 1.  Exhibit 6a, screenshot from Exhibit 6 at 20:47.*

At approximately 2:19 pm, the Cantrells exited the top of Northwest scaffolding and continued to ascend the stairs toward the Upper West Terrace.



*Image 2.  Exhibit 9a, screenshot from Exhibit 9 at 0:07.*

When the Cantrells reached the Upper West Terrace, they observed broken police barriers. The following two images come from a single video recorded by a rioter following the Cantrells up to the Upper West Terrace.



*Images 3 and 4.  Exhibits 10a and 10b, screenshots from Exhibit 10 at 0:15 and 0:30.*

The Cantrells spent approximately 19 minutes on the Upper West Terrace observing the chaos unfold outside of the Capitol building.



*Image 5.  Exhibit 11a, screenshot from Exhibit 11 at 0:25.*

The Cantrells moved south on the Upper West Terrace, past the broken police barriers identified in Image 4.  Their path was blocked by a makeshift barricade, beyond which was a line of police officers in riot gear.  A video from a rioter shows the barricade, police, and then pans to the left to show the Cantrells ascending the stairs toward the Upper West Terrace door (the "UWT door") where they entered the Capitol building.



*Images 6 and 7.  Exhibits 15a and 15b, screenshots from Exhibit 15 at 0:58 and 1:15.*

At 2:37pm, an individual with a video camera talked to one of the five USCP officers who responded to the breach at the UWT door. The officer told that individual that no one was allowed inside the building.





*Images 8 and 9.  Exhibits 16a and 18a, screenshots from Exhibits 16 at 0:18 and 18 at 17:43.*

At that same exact time, Jared Cantrell and Quentin Cantrell entered the Capitol building, mere feet from where that USCP officer told the rioters they were not permitted to enter the Capitol building. Nevertheless, Eric Cantrell entered the building seconds later.





*Images 10 and 11. Exhibits 17a and 17b, screenshots from Exhibit 17 at 17:44 and 17:53.*

On their way inside the building, the Cantrells passed five USCP officers inside the UWT door.





*Images 12 and 13.  Exhibits 18b and 18c, screenshots from Exhibit 18 at 17:59 and 18:13.*

The Cantrells did not go through security and there was no indication that anyone was permitted to enter the Capitol building that day.  To the contrary, alarms were blaring and the door was clearly marked "Emergency Exit Only."

At 2:39 p.m., Eric Cantrell and Quentin Cantrell returned through the same set of doors and left the Capitol building.





*Images 14 and 15.  Exhibits 18d and 17c, screenshots from Exhibits 18 at 19:31 and 17 at 19:36.*

Outside the UWT doors,[3] they saw a massive police presence on their left, beyond the broken police barriers.



*Image 16.  Exhibit 19a, screenshot from Exhibit 19 at 0:12.*

Eric Cantrell and Quentin Cantrell retraced their steps back to the northwest stairs adjacent to the scaffolding.  At 3:07 p.m., they attempted to climb over the stair wall and down to the ground.  Quentin Cantrell chose not to climb down all the way to the ground and instead remained on the stairs, but Eric Cantrell climbed over the wall and lowered himself to the ground below.

---

[3] Jared Cantrell did not leave with Quentin Cantrell and Eric Cantrell.  Instead, Jared Cantrell entered the Capitol Rotunda, took several pictures and videos, and then left the Capitol building through the east Rotunda Doors (on the opposite side of the building from where the Cantrells unlawfully entered) at 2:47 p.m.  Jared Cantrell spent approximately ten minutes inside the Capitol building.



*Image 17.  Exhibit 22a, screenshot from Exhibit 22 at 2:00.*

Once on the ground, Eric Cantrell left the Capitol grounds alone.

*The Charges and Plea Agreement*

On March 8, 2022, the United States charged Eric Cantrell by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1) & (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) & (e)(2)(G). On March 10, 2022, law enforcement officers arrested him at his home in Indiana. On April 7, 2022, the United States charged Eric Cantrell by a four-count Information with violating 18 U.S.C. §§ 1752(a)(1) & (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) & (e)(2)(G). On March 27, 2023, pursuant to a plea agreement, Eric Cantrell is scheduled to plead guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, Eric Cantrell agreed to pay $500 in restitution to the Architect of the Capitol.

### III.     Statutory Penalties

Eric Cantrell now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement, Eric Cantrell faces up to six months of imprisonment and a fine of up to $5,000. Eric Cantrell must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.     Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 30 days' home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Eric Cantrell's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Eric Cantrell, the absence of violent or destructive acts is not a mitigating factor. Had Eric Cantrell engaged in such conduct, he or she would have faced additional criminal charges.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 30 days' home detention in this matter.

### B.  The History and Characteristics of Eric Cantrell

The government ran a criminal history check on Eric Cantrell, and it showed only minor traffic offenses.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be

deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

While the government appreciates the need for efficiency, the lack of a pre-sentence report could affect our assessment of specific deterrence. While we generally know his past, the nuances and contour of it are lacking, thus failing to provide context as to the degree of deterrence necessary in the case.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[4] This Court must sentence Eric Cantrell based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

---

[4] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Eric Cantrell has pleaded guilty to Count Four of the Information, charging him with parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing

uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48-49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan)

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range of for a petty offense is zero to six months. Given that narrow range, a sentence of six months, at the top of the statutory range, will not create an unwarranted disparity with a sentence of probation only, at the bottom. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr. at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71 (ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

For example, in *United States v. Fontanez-Rodriguez*, 22-cr-256 (JMC), the defendant scaled a wall to reach the Upper West Terrace, took multiple videos, entered the Capitol building through a broken window, and expressed pride in his actions in the days after January 6, 2021. Yet, he spent only one minute inside the Capitol building, which is less time than Eric Cantrell spent inside. Unlike Eric Cantwell, Fontanez-Rodriguez called the FBI on January 22, 2021, to admit he was inside the Capitol.  Here, Eric Cantrell's defense counsel reached out to the FBI in February 2021, after the FBI began its investigation into Jared Cantrell, to inform the FBI that Eric Cantrell did not wish to speak to the FBI.  Judge Cooper sentenced Fontanez-Rodriguez to twelve months' probation.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an

appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

**V.      Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 30 days' home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

<div style="margin-left: 50%;">

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      */s/ Michael L. Jones*
MICHAEL L. JONES
DC Bar No. 1047027
Trial Attorney
Capitol Riot Detailee
601 D St. NW
Washington, DC 20530
(202) 252-7820
michael.jones@usdoj.gov

Zachary Phillips
Assistant U.S. Attorney

</div>

## <u>CERTIFICATE OF SERVICE</u>

On this 22nd day of March 2023, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

 /s/ *Michael L. Jones*
Assistant United States Attorney
MICHAEL L. JONES
DC Bar No. 1047027
Trial Attorney
Capitol Riot Detailee
601 D St. NW
Washington, DC 20530
(202) 252-7820
michael.jones@usdoj.gov